IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Henry Todd,<br><br>  Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>  Respondents. | No. CV-13-8189-PCT -PGR (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES SENIOR DISTRICT JUDGE:

   Petitioner Charles Henry Todd, who is no longer confined in an Arizona State Prison, has filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 5.)[1]

---

[1] Petitioner filed this Petition while he was confined in an Arizona State Prison. Petitioner's subsequent release from custody after filing the Petition does not deprive the District Court of habeas jurisdiction. *See Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005) (holding that "if a petitioner is in custody at the time he files his federal habeas petition, his subsequent release from custody does not deprive the court of its jurisdiction"). In addition, Petitioner's release does not render his Petition moot because "'the adverse consequences of [his] criminal conviction remain.'" *Goldyn v. Hayes*, 444 F.3d 1062, 1063 n. 2 (9th Cir. 2006) (quoting *United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1470 (9th Cir. 1988)).

**I.  BACKGROUND**

**A. FACTUAL BACKGROUND AND TRIAL PROCEEDINGS**

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the facts and procedural history in the first ten pages of a 21-page memorandum decision. The court included the following facts in its opinion:

> In March 2011, an undercover Yavapai County deputy sheriff investigating the online solicitation of minors for sex created a fictitious profile on a social networking website. She listed her age as "19," but named the profile "Allyee13" and described herself as a thirteen-year old girl looking for an older boyfriend . . . .
>
> Todd sent Allyee13 a friend request through the website . . . .
>
> Between May 1 and May 15, 2009, Todd chatted online with Allyee13, believing that she was the thirteen-year-old girl described in her profile . . . .
>
> On May 2, Todd began chatting overtly about sex . . . .
>
> On May 12, Todd told Allyee13 that he read an internet story "about a guy having an affair with a 13 yr old girl and he was in his 50's." Todd said that the story made him think of Allyee13 and made him "really hard." Todd told Allyee that he liked her "a lot" and hoped to "hook up some day." He also said that Allyee13 "d[id] strange things to [his] body" because she was good looking, sexy [and] smart." When she asked what he wanted her "to do about it," Todd responded that they "should find some time together and figure it out together . . . ."
>
> On May 13, Todd again chatted with Allyee13 about his sexual history . . . . After Allyee13 answered his questions about what sexual acts she enjoyed, Todd responded, "You will learn and love to do more because u r a sensual person." Todd described in detail sexual acts that she could perform to arouse a man . . . . He said, "I get hard just thinking about it." Todd told Allyee13, "[F]or a guy that likes younger women you are like a gift from Santa early."
>
> Todd suggested that they go some place where they could be together. Allyee13 asked if Todd meant that they should go somewhere "to do stuff." When he replied yes, she suggested that they bring blankets to the forest or that they go to a hotel, his house, or even his car if it was big enough to lie down in. Todd replied that his "car is big enough." After further discussion, Allyee13 arranged to meet Todd at a park around noon the next day.

> Todd was arrested the next day when he drove to the park for their rendezvous. Todd denied that he went there to have sex. The State charged Todd with two counts of luring a minor for sexual exploitation based on his online solicitations of Allyee13 for digital penetration (count 1) and oral sex (count 2).

(Doc. 10, Exh. EE.)[2]

A jury convicted Petitioner on both counts. (*Id.*) Petitioner appealed. (*Id.*)

## B. PROCEEDINGS ON DIRECT APPEAL

In a timely, direct appeal, Petitioner raised four issues: (1) the trial court improperly permitted introduction of Defendant's statements that referred to a relationship with a different 12-year-old girl; (2) the trial court improperly precluded Defendant's hearsay statements; (3) insufficiency of the evidence; and, (4) indictment duplicity. (*Id.*) The Arizona Court of Appeals affirmed Petitioner's convictions and sentences on November 6, 2012. (*Id.*) On February 12, 2013, the Arizona Supreme Court denied review. (*Id.*)

## C. PETITION FOR POST-CONVICTION RELIEF

On March 25, 2013, Petitioner filed a Notice of Post-Conviction Relief ("PCR"). (Doc. 10, Exh. GG.) On May 16, 2013, Petitioner's appointed counsel filed a notice with the trial court stating that counsel could not find a colorable claim for review. (Doc. 10, Exh. KK.) The trial court then gave Petitioner an additional 45 days to file a *pro se* PCR petition. (Doc. 10, Exh. LL.) Petitioner did not file a *pro se* PCR petition and the trial court dismissed the PCR proceeding on September 4, 2013. (Doc. 10, Exh. MM.)

## D. FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On December 3, 2013, Petitioner filed the instant Amended Petition for Writ of Habeas Corpus. Petitioner asserts nine grounds for relief, which allege the following:

(1) entrapment and ineffective assistance of counsel for failing to attack the case detective's credibility in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights;

(2) counsel rendered ineffective assistance by portraying Petitioner as

---

[2] Ten pages of detailed facts that are contained in the appellate decision are not recounted here.

      having a life-long interest in children;

      (3) indictment duplicity and non-unanimous verdict;

      (4) defense counsel filed to request a synopsis of the scope of Detective Edgerton's investigation or operation and rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights;

      (5) Petitioner's exposure in jail to something that was contagious and caused and   caused him to itch and squirm in court caused him to appear to be evading issues at trial and violated his Eighth Amendment rights;

      (6) counsel rendered ineffective assistance by introducing a "fairy tale" and damaging information about Petitioner's involvement in a high school "coming out" party and a meeting with a teacher, in violation of his Sixth Amendment rights;

      (7) (a) the trial court improperly admitted bad act evidence, and (b) did not allow non-hearsay testimony, in violation of Petitioner's Sixth and Fourteenth Amendment rights;

      (8) counsel rendered ineffective assistance in violation of Petitioner's Sixth and Fourteenth Amendment rights by suggesting that Petitioner accept a proffered plea bargain; and,

      (9) counsel rendered ineffective assistance in violation of his Sixth Amendment rights by failing to follow-through on a co-operation agreement with the Yavapai County Sheriff's Department.

(Doc. 5.)

      Respondent filed an Answer on March 21, 2014. (Doc. 8.) Respondent asserted that all but one of the allegations in the timely petition were procedurally barred. (*Id*.) Respondent further asserted that Petitioner's counsel was not ineffective, and that Petitioner's claims nonetheless fail on their merits. Respondent asserted that the remaining claim was not contrary to clearly established Supreme Court precedent. (*Id*.)

      Petitioner did not file a reply.

**II.   APPLICATION OF LAW**

      The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244.

      **A. THE PETITION IS TIMELY.**

      The AEDPA imposes a one-year limitation period, which begins to run "from the

latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner's PCR proceedings were dismissed on September 4, 2013, and Petitioner filed the instant Amended Petition on December 3, 2013. The Petition is timely.

### B. THE PETITION IS PROCEDURALLY BARRED.

#### 1. Law

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court... thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum ... (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178

(2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 735 n. 1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 732. *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's

6

procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook v. Schriro*, 538 F.3d 1000, 1028 n. 13 (9th Cir. 2008). Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

### 2. Application

Grounds One (entrapment, ineffective assistance for failing to attack detective's credibility), Two (ineffective assistance for discussing Petitioner's history with children), Four (ineffective assistance for failing to attack scope of investigation), Five (exposure to jail contagion), Six (ineffective assistance for discussing Petitioner's childhood), Eight (ineffective assistance related to plea bargain), and Nine (ineffective assistance for failing to complete cooperation agreement) are unexhausted and procedurally defaulted because

Petitioner raises them for the first time.[3] Claims raised for the first time on habeas review are not exhausted because they were not fully and fairly presented to state courts. *See* 28 U.S.C. § 2254(b). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact [he] was asserting a claim under the United States Constitution." *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted). Here, these claims were never presented. The failure to fairly present these grounds has resulted in procedural default because Petitioner is now barred from returning to state courts. *See* Ariz.R.Crim.P. 32.2(a), 32.4(a). *See also Coleman*, 501 U.S. at 735 n. 1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas.").

Ground Three (duplicity) was not raised as a federal claim in state court. In his appeal, Petitioner argued that "Article 2, Section 23 of the Arizona Constitution guarantees a defendant the right to a unanimous jury verdict in a criminal case." (Doc. 10, Exh. BB at 28.) Petitioner's argument in his state appeal rested exclusively on state law grounds and is unexhausted. *See Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Ground Seven contains two arguments. Ground Seven (a)—other act evidence was improperly admitted—was not raised as a federal claim in state court. Petitioner's appellate argument focused solely on violations of Rules 404 and 403 of the Arizona Rules of Evidence. (Doc. 10, Exh. BB at 7-17.) Petitioner did cite two federal, appellate

---

[3] Grounds Two and Six assert similar claims (ineffective assistance of counsel for portraying defendant as someone interested in children). Ineffective of assistance was not raised on appeal, and no PCR was filed. The substantive claim regarding the introduction of this same evidence as impermissible "other act" evidence is raised by Petitioner in Ground Seven (a).

cases in his Reply brief (*United States v. Green*, 617 F.3d 233 (3rd Cir. 2010) and *United States v. Reed*, 887 F.2d 1398 (11th Cir. 1989)), but he did not raise a federal claim in his argument. (Doc. 5-1 at 6.) These citations were unalloyed with argument that presented a federal constitutional claim, and are insufficient exhaustion. *See Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir.2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory.").[4]

Ground Seven (b)—the trial court improperly precluded the introduction of his prior, exculpatory statements—is reviewed below.

Petitioner has not established grounds to excuse the procedural default by a showing of cause and prejudice, and he has not argued a fundamental miscarriage of justice. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted).

Petitioner offers conclusory assertions regarding the cause for the failure to present these arguments previously. Petitioner alleges that PCR counsel would not "pursue," "address," "discuss," or "consider" several of the arguments he now presents.

---

[4] Petitioner also notes, for the first time, that he was sentenced under another name. If this is an argument, it is also unexhausted and procedurally defaulted. Moreover, the trial court consistently referred to Petitioner by his name. This Court assumes Petitioner references a clerical error on the second and third pages of the sentencing minute entry. (Doc. 10, Exh. Z.) The court corrected the clerical error with a subsequent minute entry. (Doc. 10, Exh. AA.).

(Doc. 5 at 9-17.)[5] These brief statements are insufficient to establish cause to cure Petitioner's procedural default. *See United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (stating that a mere "conclusory statement" demonstrates neither cause nor prejudice).

Petitioner, however, also alleges ineffective assistance of counsel throughout his Petition.[6] Although cursory, Petitioner's claims are liberally construed. "Prisoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir.2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).

Ordinarily, to satisfy the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation. *Ortiz*, at 932. Thus, where no constitutional right to an attorney exists (e.g. in a PCR proceeding), ineffective assistance will not amount to cause excusing the state procedural default. *Id.* "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (citations omitted). In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), however, the Court recognized a narrow exception to the *Coleman* rule. Under *Martinez* a petitioner may establish cause for the procedural default of an ineffective assistance claim by demonstrating two things: (1) 'counsel in the initial review collateral proceeding, where the claim should have been raised, was ineffective

---

[5] Petitioner's only other cited cause (Ground Nine) was that he "didn't realize the problem until recently." (Doc. 5 at 15.) Petitioner's pro se status and ignorance of the law do not satisfy the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986).

[6] Petitioner does not assert ineffective assistance of counsel in Ground Three (duplicity and non-unanimous verdict) and Ground Five (exposure to jail contagion) and there is no cause or prejudice argued by Petitioner. These claims remain unexhausted and procedurally defaulted.

under the standards of *Strickland*[7] . . . ' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 132 S.Ct. at 1318).

### 3. *Martinez*

The Court finds that even if *Martinez* did apply to Petitioner's case, it does not provide cause to excuse the procedural default of these claims. Petitioner's trial counsel was not deficient and Petitioner suffered no prejudice.[8]

In Ground One, Petitioner claims trial counsel should have argued entrapment because the police officer "initiated an on-line discussion relating to various sexual acts and behavior." (Doc. 5 at 9.) Entrapment was not Petitioner's defense. "In his opening statement, Todd's counsel informed the jury that Todd believed he was chatting with a law enforcement officer." (Doc. 10, Exh. EE at 14.). In Ground One, Petitioner confirms this defense by stating that "any savvy teen would see the website as a phony." (Doc. 5 at 9.) Petitioner testified at trial that "I didn't believe was talking to a minor." (Doc. 10, Exh. K at 112.) Counsel was not ineffective for failing to pursue an inconsistent defense that was contrary to Petitioner's testimony. *See Turk v. White*, 116 F.3d 1264, 1266–67 (9th Cir. 1997) (concluding that once counsel reasonably selects a defense, failing to present an alternative and inconsistent defense is not ineffective assistance of counsel); *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980) (stating that "[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation.") (internal citation omitted). This claim also has little merit in light of the

---

[7] *Strickland v. Washington*, 466 U.S. 668 (1984).

[8] Petitioner does not allege ineffective assistance of PCR counsel. Petitioner's claims, if any, regarding PCR counsel are so vague that they would not qualify as having "some merit." "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Without identifying the specific claims that Petitioner contends should have been raised after appeal, Petitioner cannot prevail.

overwhelming evidence presented to the jury. (Doc. 10, Exh. EE at 1-10.)

In Grounds Two, Six, and Seven[9], Petitioner claims trial counsel was ineffective for introducing inaccurate and prejudicial other-act evidence. All three of these claims derive from the introduction of a trial transcript (Doc. 10, Exh. P.; Trial Exhibit 21) that documents the online conversations between Petitioner and the detective. This exhibit was introduced by the State over defense counsel's objection. (Doc. 10, Exh. J at 5-61.) In a conference with the trial attorneys, the court stated that ". . . I spoke with counsel, at the bench, concerning the admission of Exhibit Number 21, which has already been admitted over the defense's objection." (Doc. 10, Exh. J at 87.) Petitioner's counsel objected to the introduction of the "coming out" party and the "liaison" evidence. Petitioner's claim is unfounded.

In Ground Four, Petitioner alleges trial counsel filed to request discovery regarding of the scope of Detective Edgerton's investigation to consider impeachment and determine how subjects were selected for investigation. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. This includes a duty to investigate a defendant's "most important defense" and to "investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001), amended on denial of reh'g 253 F.3d 1150 (9th Cir. 2001) (citations omitted).

Petitioner's claim that "a synopsis of the scope and restrictions placed" on the detective would have allowed for proper impeachment is conclusory and speculative.

---

[9] In Ground Two, Petitioner claims counsel rendered ineffective assistance by portraying Petitioner as having a life-long interest in children. In Ground Six, Petitioner asserts counsel was ineffective by introducing evidence of a high school "coming out" party and "liaison" with high school teacher. In Ground Seven, Petitioner claims (a) the court improperly admitted "bad act" evidence and (b) the preclusion of non-hearsay exculpatory evidence denied him of a fair trial. The court reviews argument of Ground Seven (b) below.

(Doc. 5 at 16.) "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). First, the primary evidence in the case consisted of the conversations between Petitioner and the detective. In light of Petitioner's trial claim that he knew he was conversing with a police officer, the question before the jury was whether Petitioner "offer[ed] or solicit[ed] sexual contact" with a minor, and not whether the detective acted improperly. Thus, the impeachment of the detective would not have changed the question before the jury. Second, Petitioner fails to explain how a synopsis of the investigation would have assisted him. *See Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (rejecting petitioner's ineffective assistance claim where he presented no evidence concerning what counsel would have found had he investigated further, or what lengthier preparation would have accomplished). Third, as documented by the court of appeals, the evidence implicating Petitioner was also substantial. (Doc. 10 at EE.) Even if the failure to impeach the detective was unreasonable, Petitioner has failed to demonstrate prejudice. The test for prejudice with respect to defective investigations is "whether the noninvestigated evidence was powerful enough to establish a probability that a reasonable attorney would decide to present it and a probability that such presentation might undermine the jury verdict." *Mickey v. Ayers*, 606 F.3d 1223, 1236–37 (9th Cir. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 535 (2003)). Even if there was potential impeachment, such information was of minor value in a case where the actions of the Petitioner were recorded and presented to the jury. Any potential impeachment does not establish a probability sufficient to undermine the jury verdict.

In Ground Eight, Petitioner claims that counsel was ineffective by recommending Petitioner accept a plea offer, which Petitioner ultimately refused. Petitioner alleges that the plea offer he refused required a ten-year sentence and subsequent lifetime probation. (Doc. 5 at 14.) Petitioner received a sentence after trial of 42 months imprisonment without probation. (Doc. 10, Exh. Z.) A two-step analysis governs Petitioner's ineffective assistance of counsel claim for relief. *Strickland*, 466 U.S. at 687. First, Petitioner must

prove that his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88, 690. To establish deficient performance, Petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, Petitioner must show that he was prejudiced by demonstrating a reasonable probability that, but for his counsel's errors, the result would have been different. *Id*. at 694.

Petitioner cannot satisfy he was prejudiced. Assuming arguendo that counsel deficiently advised Petitioner to accept a ten-year imprisonment plea, Petitioner is required to prove the plea result would have been more favorable. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012) (stating that ". . . a defendant must show . . . the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."). Petitioner's trial sentence was significantly lower than the plea offer he rejected. Petitioner cannot establish that but for counsel's advice, his result would have been different (in his favor). Petitioner's claim is meritless.

In Ground Nine, Petitioner alleges counsel was ineffective for failing to "follow through on agreement made with Yavapai [County] Sheriff's Deputies." (Doc. 5 at 15.) Petitioner does not argue that a cooperation plea offer was extended by the State. Petitioner alleges that he "agreed to provide the means of delivery, times, [&] those taking delivery" in return for benefits. (Doc. 5 at 15.) Petitioner does not contend, or establish, that the State accepted his offer. The State was not required to accept his invitation or extend him a different plea offer. "[T]here is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Trial counsel cannot be ineffective when no offer was extended.

Petitioner fails to satisfy the ineffective assistance of counsel standard under Martinez. Accordingly, his claims are procedurally barred from review.

14

## C. THE STATE COURT DETERMINATION OF GROUND SEVEN(b) WAS NOT CONTRARY TO FEDERAL LAW.

### 1. Law

If a habeas petition includes a claim that was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 132 S.Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d) (2); *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). This standard is "difficult to meet." *Harrington*, 131 S.Ct. at 786. It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

When a state court decision is deemed to be "contrary to" or an "unreasonable

application of" clearly established federal law, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002). "Actual prejudice" means that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

Violations of the Arizona Rules of Evidence do not generally provide grounds for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). However, a state court's evidentiary ruling becomes subject to federal habeas review when the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. (*Id*. at 68.)

### 2. Analysis

Petitioner contends that the preclusion of his prior statements violated his rights under the Sixth and Fourteenth Amendments. Petitioner asserts "that the trial court erred by excluding hearsay testimony from D.L. and her son-in-law that he told them before his arrest that he believe he had been chatting with an undercover police officer." (Doc. 10, Exh. EE at 14.) The Arizona Court of Appeals disagreed, finding that their preclusion did not deprive Petitioner of a fair trial. "We need not resolve whether the trial court correctly excluded this testimony because Todd's counsel nevertheless skillfully placed this information before the jury." *Id*. The court concluded that because the "jury thus considered the evidence, we find no reversible error on this ground." *Id*. At 15-16. This Court must determine if that ruling involved an unreasonable application of clearly established federal law.

This Court agrees with the Court of Appeals that Petitioner was not harmed by the preclusion of these statements from the two witnesses, even though only part of this evidence was admitted. A review of the trial establishes that the court of appeals was only partially correct that this information had been placed before the jury. The jury heard

16

evidence that Petitioner spoke with police after his arrest and told them he knew he was talking to a police officer during the online conversations. (Doc. 10, Exh. K at 24-25.) Petitioner told the detective he told two witnesses (D.L and W.W.) his belief days before his arrest. (*Id.* at 102.) The detective testified that she later interviewed D.L. to determine if Petitioner had made those statements to her prior to his arrest. (*Id.* at 27.) The detective testified in trial that she confirmed part of Petitioner's statements. (*Id.* at 27.) Both D.L. and W.W. testified that they spoke with Petitioner several days prior to his arrest. (*Id*. at 87-89, 95-96.) Petitioner's counsel argued this exculpatory evidence to the jury during closing arguments. (Doc. 10, Exh. M at 59.)[10] There was no testimony by the detective confirming that Petitioner's statements to W.W. were made before Petitioner's arrest. Thus, the court of appeals was partially correct that this exculpatory information was presented to the jury. Nonetheless, the court of appeals was correct that any error was harmless. Along with the strength of the transcript evidence, the detectives also arrested Petitioner at the park at the time and place he agreed to meet Alyee13. Petitioner had a blanket in his car as discussed with Alyee13. (Doc. 10, Exh. J at 150.) Even if W.W. and D.L. had testified, Petitioner's conduct and his conversations render any preclusion harmless and not an unreasonable application of federal law. *See United States v. Kahre*, 737 F.3d 554 (9th Cir. 2013) (finding that precluding self-serving statements of defendant was not plain error, and determining any preclusion was harmless in light of a strong government case); *Mitchell*, 540 U.S. at 18 (stating that habeas relief is appropriate only if state court's application of harmless-error review was objectively unreasonable). Accordingly, the Court will recommend that Petitioner's claim as asserted in Ground Seven (b) of his habeas petition be denied.

---

[10] Petitioner also testified that he made these statements to the two witnesses. Petitioner testified that, prior to his arrest, he told witness W.W. that "… I was talking to someone on line that says she is thirteen but I have reason to believe she is way over that age, and a police officer – he or she is a police officer." (Doc. 10, Exh. K at 102.) Petitioner testified he had a similar conversation with D.L. prior to the conversation with W.W. (*Id.*)

**CONCLUSION**

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011)*; Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

Based on the above analysis, the Court finds that Grounds One, Two, Four, Five, Six, Eight, and Nine are unexhausted and procedurally defaulted because Petitioner raises them for the first time. Grounds Three and Seven (a) are procedurally defaulted because they were not raised as a federal claim in state court. Petitioner has not satisfied the burden to establish ineffective assistance of counsel as to any ground. Under Ground Seven (b) Petitioner has not established that he was prejudiced by any finding that was "contrary to" or an "unreasonable application of" clearly established federal law. The Court will therefore recommend that the Amended Petition for Writ of Habeas Corpus (Doc. 5) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 19th day of March, 2015.

Honorable John Z. Boyle
United States Magistrate Judge